IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAY ELIZABETH GRAHAM,                           No. 3:15-cv-01560-HZ

                Plaintiff,

     v.

CAROLYN COLVIN, Acting                           OPINION & ORDER
Commissioner of Social Security,

                Defendant.


Tim Wilborn
WILBORN LAW OFFICE, P.C.
P. O. Box 370578
Las Vegas, Nevada 89137

        Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902


1 - OPINION & ORDER

Martha A. Boden
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorney for Defendant

HERNANDEZ, District Judge:

      Plaintiff Kay Elizabeth Graham brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  I reverse the Commissioner's decision and remand for additional proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB on December 9, 2011, alleging an onset date of May 5, 2010. Tr. 159-66.  Her application was denied initially and on reconsideration.  Tr. 65-78, 99-103 (initial); 79-94, 104-08 (reconsideration).

      On January 6, 2014, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge (ALJ).  Tr. 38-62.  On January 24, 2014, the ALJ found Plaintiff not disabled.  Tr. 23-37.  The Appeals Council denied review.  Tr. 1-5.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on degenerative disk disease, complications from back surgery, and seizures.  Tr. 192.  At the time of the hearing, she was fifty-six years old.  Tr. 43. She has two years of college and has past relevant work experience as an "assay tech."  Tr. 43, 184.

2 - OPINION & ORDER

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 28. Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of degenerative disc disease status post cervical fusion and lumbar disc arthroplasty, but that the impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 28-29.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with occasional postural activities. Tr. 29. She cannot perform repetitive overhead reaching, but she can perform frequent handling. Id. She also "must avoid hazards (i.e. working at heights and operating dangerous/moving machinery - not including a conveyor belt)." With this RFC, the ALJ determined that Plaintiff is able to perform her past relevant work as an assay technician as generally performed and as described in the Dictionary of Occupational Titles. Tr. 32-33. Thus, the ALJ determined that Plaintiff is not disabled. Tr. 33.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

4 - OPINION & ORDER

Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred (1) by finding her subjective testimony not credible; (2) by concluding that she can perform her past relevant work; (3) by improperly rejecting medical opinions; and (4) by improperly rejecting lay witness testimony.

I.  Credibility Determination

The ALJ is responsible for determining credibility.  Vasquez, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could

reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain.  Id.; see also Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in Molina;

In evaluating the claimant's testimony, the ALJ may use ordinary techniques of

credibility evaluation.  For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]  While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

Molina, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

Both at the hearing and in written submissions before the hearing, Plaintiff stated that she was limited by pain.  She testified that she does not cook or clean or shop.  Her husband performs these chores instead.  Tr. 46; see also Tr. 200, 201 (Feb. 8, 2012 Function Report noting that she does not prepare her own meals, does no household chores, and her husband does all the shopping).  During the day, she lies or sits on the couch and watches television.  Tr. 46-47; see also Tr. 199 (Feb. 8, 2012 Function Report noting that after breakfast, she moves to the couch to watch television).  She rarely drives but she has a license.  Id.

She can sit but has to get up and stand, which she can do if she is holding onto something. Tr. 50.  After about twenty minutes of sitting, she lies down, cycling back and forth throughout the day.  Tr. 55.  She can walk okay with her husband's help but she relies on him to steady herself by holding his arm and cannot walk far without him.  Tr. 50, 54.  She stated that she had fallen quite a bit around the house.  Tr. 54.  Plaintiff explained that she can walk a ways if she is holding on, but if she cannot grab something, sharp pain in her right leg will cause her to "go down."  Id.  Plaintiff lives in a single story home but if she encounters stairs, she crawls to get up and down them.  Tr. 54-55.  She can lift and carry five pounds.  Tr. 51; see also Tr. 203 (Feb. 8,

7 - OPINION & ORDER

2012 Function Reporting indicating she can lift a maximum of fifteen pounds). She showers every other day because putting her arms over her head to wash her hair causes pain. Tr. 54.

Plaintiff stopped working in 2010 because of neck and back pain. Tr. 52. She has had both a cervical spine fusion and a lumbar disk replacement. Id. She has pain in her neck and low back as well as in her shoulders and arms. Tr. 53; see also Tr. 201 (Feb. 8, 2012 Function Report stating she does not do house or yard work because of back pain).

The ALJ applied the two-step credibility analysis. Tr. 30. She explained that after considering the evidence, Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Id. But, she stated, the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." Tr. 30-31.

Next, the ALJ cited the medical evidence showing a history of cervical spine degeneration with a 2009 fusion as well as a history of lumbar fusion with ongoing multilevel degenerative disc disease. Tr. 31. She noted a 2010 x-ray confirming a shoulder fracture and further noted seizure-like symptoms and abdominal pain related to alcohol withdrawal in 2010 and 2011. Id. The ALJ then remarked that Plaintiff's physical exams were unremarkable aside from the shoulder fracture in July 2010 and some abdominal tenderness in April 2011. Id. (citing Ex. 1F).

At that point, the ALJ stated that "overall," Plaintiff failed to pursue follow-up treatment for her shoulder and failed to attend multiple scheduled appointments. Id. The ALJ found that treatment for Plaintiff's back complaints was intermittent and that the complaints were unsupported by any physical findings. Id. She also remarked that Plaintiff refused to follow

repeated recommendations to cease her alcohol or tobacco use or to pursue physical therapy.  Id.
The ALJ explained that Plaintiff's failure to pursue recommended treatment methods and failure
to attend scheduled appointments is not what would be expected of an individual making "the
complaints alleged by the claimant."  Id.

The ALJ then recited the examination and findings of examining physician Dr. Harry
Duran, M.D.  Id.  The ALJ noted that Dr. Duran opined that Plaintiff could perform light work
with occasional postural activities, with a limited ability to reach at and above shoulder level.  Id.
The ALJ also noted that Dr. Duran commented that Plaintiff's alcoholism would likely prevent
her from handling heavy equipment or industrial service vehicles safely and that she was a high
fall risk.  Id.  Next, the ALJ discussed the opinion of nonexamining state agency physician Dr.
Elsie Villaflor, M.D., who opined that Plaintiff could perform light work with frequent
pushing/pulling, occasional overhead reaching, and frequent front and lateral reaching.  Tr. 32.
Dr. Villaflor opined that Plaintiff could not climb ladders, ropes, or scaffolds but she could
occasionally perform all other postural activities.  Id.  She also was restricted to avoiding
hazards.  Id.

Summarizing her discussion, the ALJ explained:

After reviewing the evidence of record, I find the claimant's statements about her
symptoms are inconsistent with the fairly unremarkable exam findings and they
are unsupported given the claimant's repeated failure to pursue any recommended
treatment.  Further, it appears the claimant's symptoms are aggravated by her
persistent alcohol consumption.

Id.

Plaintiff argues that the ALJ erred in finding her subjective symptom testimony not
credible.  Plaintiff contends that the ALJ did not sufficiently articulate what symptom testimony

9 - OPINION & ORDER

was not credible and failed to explain how the ALJ's interpretation of the medical evidence detracted from Plaintiff's credibility.  Additionally, Plaintiff argues that the ALJ failed to identify any repeated failure to pursue recommended treatment and failed to consider Plaintiff's financial inability to afford treatment.  Plaintiff also notes that the ALJ cannot reject a claimant's credibility based on objective evidence alone.  Finally, Plaintiff states that the ALJ did not identify what symptoms she believed are aggravated by Plaintiff's alcohol consumption.  Plaintiff argues that the record indicates that alcohol affects only her depression and seizure disorder, disorders she does not contest are non-severe.  She contends that there is no substantial evidence to find that any physical impairments are aggravated by alcohol consumption.

In Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir. 2015), the Ninth Circuit concluded that the ALJ erred in finding a claimant not credible when the ALJ made a single conclusory statement which "failed to identify specifically which of [the claimant's] statements she found not credible and why."  Id. at 493.  Instead, the ALJ had "stated only that she found, based on unspecified claimant testimony and a summary of medical evidence" that the claimant's functional limitations from her impairments were "less serious than she has alleged."  Id.  The court found fault with the ALJ's decision because it "did not specifically identify any [] inconsistencies" and instead, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."  Id. at 494.  For the Ninth Circuit, this was insufficient.  Id.  "This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited."  Id.  Further, although the district court could make reasonable inferences from the ALJ's summary of the evidence, the Ninth

Circuit explained that the credibility determination is exclusively the ALJ's to make and the court's review is limited to reasons the ALJ asserts.  Id.

In an earlier decision, cited in Brown-Hunter, the court criticized an ALJ who provided an RFC and then stated in conclusory fashion that the claimant's subjective symptom statements were not credible to the extent they were inconsistent with the RFC.  Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).  The court described what the ALJ did next as "drift[ing] into a discussion of the medical evidence" and providing "no *reasons* for the credibility determination." Id.; see also id. at 1138 (noting that "[g]eneral findings are insufficient[,]" that the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints," and that the ALJ is required "to point to *specific facts* in the record" to support a negative credibility determination) (internal quotation marks omitted).

The ALJ's decision in this case comes perilously close to violating the specificity requirements as explained in Brown-Hunter, Burrell, and cases cited therein.  Here, the ALJ stated that Plaintiff was not credible for "the reasons explained in this decision" without guiding the reader to any particular part of the following discussion.  After reciting some of the medical evidence, the ALJ announced her finding in a single paragraph where she essentially gives three reasons to find Plaintiff's testimony not credible: (1) her alleged symptoms are not supported by the objective medical evidence due to "fairly unremarkable exam findings"; (2) Plaintiff failed to follow recommended treatment or missed appointments; and (3) her symptoms are aggravated by alcohol use.  In contrast to Brown-Hunter and Burrell, the ALJ's summary paragraph at least cites to a couple of specific reasons in support of her decision.  Nonetheless, she still fails to identify what specific testimony is not credible (is it that Plaintiff does no chores, that she has to lie

down, that her lifting is restricted, that she has a hard time walking?) which creates challenges

for a reviewing court.

An ALJ may not rely solely on a contradiction with, or a lack of support from, the

objective medical evidence as a basis to find a claimant not credible.  20 C.F.R. §

404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once a claimant

produces objective medical evidence of an underlying impairment, an ALJ may not reject a

claimant's subjective complaints based solely on a lack of objective medical evidence to fully

corroborate the alleged severity of pain[.]") (internal quotation marks and brackets omitted).

Here, the ALJ gave two other reasons for finding Plaintiff's testimony not credible.  I discuss

these first, before turning to the objective medical evidence.

The ALJ found that Plaintiff failed to pursue recommended treatment and missed

appointments.  Tr. 31.  In support, she cites to Exhibits 1F, 2F, and 12F.  Id. (citing to Exhibits

1F and 2F for the failure to follow-up with treatment for the shoulder, failure to cease alcohol or

tobacco use, and failure to pursue physical therapy; citing to Exhibit 2F for missing

appointments; and citing to Exhibit 12F for failure to cease alcohol or drug use and failure to

pursue physical therapy).  Exhibit 1F contains 266 pages from Northeastern Regional Hospital

and covers a time frame of more than two years, from September 20, 2009 to November 27,

2011.  Tr. 241-506.  Citing to the entire exhibit without specifying a page or a particular date is

no better than simply referring to the entire record without specification.  The citation does not

provide the Court with any reasonable or meaningful way to determine what medical evidence in

the record the ALJ relied on as unsupportive.  See Brown-Hunter, 806 F.3d at 494 (stating the

non-credibility conclusion followed by a summary of medical evidence supporting the RFC

12 - OPINION & ORDER

determination is "not the sort of explanation or the kind of 'specific reasons' [the court] must have in order to review the ALJ's decision meaningfully"); Burrell, 775 F.3d at 138 (court is not to take a "general finding - an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors - and comb the administrative record to find specific conflicts.").

While Exhibit 2F is not 266 pages, it is 43 pages and covers a range of dates from June 8, 2009 to December 27, 2011.[1]  Without a page or date reference, this citation fails to a provide meaningful basis for support.  Finally, the ALJ also cites to Exhibit 12F which is much shorter at only 13 pages, but consists of records entirely pre-dating Plaintiff's alleged onset date.  Tr. 591-603 (records from University Orthopaedic Center from January 11, 2010 to March 2, 2010).

As to Plaintiff's failure to comply with recommendations to cease her alcohol use, neither the ALJ nor Defendant mention Plaintiff's hearing testimony that she had not had a drink since November 2012.  Tr. 49.  While she may have been advised several times to quit before actually doing so, it appears she did reduce her alcohol consumption substantially or completely, thus eventually complying with those recommendations.  Id.; see also Tr. 580 (Apr. 15, 2013 report during psychological evaluation that she quit heavy drinking in November 2012).  The record also shows that Plaintiff attempted to quit drinking even before November 2012 and thus, the ALJ's finding that she failed to follow recommendations to stop drinking are not supported by the

---

[1]  This exhibit shows that Plaintiff missed several appointments over a period of almost two and one-half years. Tr. 507-49.  But, the missed appointments were usually for routine care, to establish a new provider, to follow up with medications, or for a sore throat.  Id.  Several times, Plaintiff did come in after she missed or canceled an appointment.  More notable, however, is that none of the missed appointments appear to have been scheduled for musculoskeletal complaints and thus, her failure to attend them does not create an inference that those complaints were not as serious as she alleges.

record.  E.g.. Tr. 509 (Sept. 28, 2011 chart note indicating she had been abstaining from alcohol

for six weeks); Tr. 512 (Aug. 19, 2011 chart note noting recent discharge from alcohol rehab

program).[2]

As to the other assertions by the ALJ, Defendant attempts to supplement the ALJ's

decision by pointing to specific citations in the record.[3]  Defendant provides the precise citation

to a March 2, 2010 chart note by Dr. Darrel Brodke, M.D., an orthopedist, whom Plaintiff saw in

2010 for neck and back pain.  Tr. 594-95.  In a March 2010 visit, Plaintiff reported that she had

followed the recommended treatment of performing exercises Dr. Brodke had given her in

January, but her symptoms had worsened, especially in the low back.  Tr. 594.  At the end of his

examination, Dr. Brodke wanted to treat her symptoms with a "Medrol Dosepak."  Tr. 595.  He

also recommended a "McKenzie extension exercise program to be done with physical therapist."

Id.  If her symptoms were unimproved in another six weeks, he planned to do an MRI and see her

again.  Id.

Defendant is correct that the record does not show that Plaintiff performed the McKenzie

exercise program with a physical therapist or that she returned to Dr. Brodke.  But, as Plaintiff

notes, the record does not disclose a formal referral to or prescription for physical therapy.

Rather, this was a recommendation, not a requirement.

More importantly, the ALJ failed to explore why Plaintiff may not have followed

---

[2]  I also agree with Plaintiff that Plaintiff's alcohol consumption related to her depression, seizure disorder, and abdominal pain but not to her musculoskeletal complaints.  Furthermore, Plaintiff does not challenge the ALJ's step-two finding that her alcoholism is non-severe.

[3]  Defendant does not, however, point to any evidence in support of the ALJ's finding that Plaintiff failed to pursue follow-up treatment for her shoulder.

recommended treatment, or why she may have canceled or missed appointments.  The record

suggests that Plaintiff cannot afford care.  During her hearing, Plaintiff testified she had no

medical insurance.  Tr. 51.  She later expressly stated that "if I had medical insurance, I could

maybe go to a physical therapist, and they could help me."  Tr. 57; <u>see</u> <u>also</u> Tr. 579 (April 15,

2013 statement made in psychological evaluation that she had no insurance); Tr. 226 (Plaintiff's

husband reported in March 2013 that Plaintiff cannot afford to see a doctor and had run out of

medications).  While unexplained, or inadequately explained, failure to seek or follow

recommended treatment may be the basis for an adverse credibility finding, "disability benefits

may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack

of funds."  <u>Orn v. Astrue</u>, 495 F.3d 625, 638 (9th Cir. 2007) (internal quotation marks omitted).

Social Security Ruling (SSR) 96-7p addresses this issue by prohibiting ALJs from drawing

inferences about a claimant's impairments or functional effects from a failure to see or pursue

treatment "without first considering any explanations that the individual may provide, or other

information in the case record, that may explain infrequent or irregular medical visits or a failure

to seek medical treatment."  SSR 96-7p, available at 1996 WL 374186, at *7.  The SSR notes

that the adjudicator may need to re-contact the individual or ask questions at the hearing to

determine whether there are good reasons for the failure to seek or pursue treatment consistently.

<u>Id.</u>

Defendant attempts to overcome the ALJ's failure to address this issue by offering its own

reasons and interpretation of the record.  But, the credibility determination is for the ALJ in the

first instance and it is not for Defendant to offer a rationale not mentioned by the ALJ.  <u>See</u>

<u>Burrell</u>, 775 F.3d at 1138 (explaining that the court could not consider the inconsistencies

15 - OPINION & ORDER

identified by the government and not the ALJ because the court is "constrained to review the reasons the ALJ asserts") (internal quotation marks omitted). Additionally, Defendant's argument is not supported in the record. Defendant suggests that because Plaintiff was able to afford to buy alcohol, she could afford medical treatment. There is no evidence in the record to show that the price for ongoing physical therapy appointments, for example, equals the cost of beer or other alcohol purchases.

Defendant also states that in 2010 and 2011, Plaintiff regularly sought treatment for other complaints without referring to musculoskeletal issues. From this, Defendant argues that Plaintiff could, in fact, afford treatment for her neck and back pain and by choosing not to, the ALJ properly inferred that Plaintiff's subjective testimony regarding her musculoskeletal complaints was not credible. Defendant cites to Exhibit 2F which are records from Golden Health Family Medical Clinic, from June 8, 2009 to December 27, 2011. Tr. 507-49. Plaintiff received routine medical care and medication management while a patient there. E.g., Tr. 509 (Sept. 28, 2011 for bad cough and follow-up on medications); Tr. 520 (Feb. 1, 2011 for medication refill); Tr. 528 (Jan. 28, 2010 for sore throat); Tr. 536 (Aug. 3, 2009 for follow-up on medications). Notably, during at least part of this time, she saw Dr. Brodke for her back and neck pain. Tr. 591-601. Although Plaintiff did not apparently seek treatment or care from her family practitioner for her back and neck pain, she did see a specialist about her complaints during this time. Tr. 591-601. Thus, the underlying premise of Defendant's credibility argument, that Plaintiff sought treatment for non-musculoskeletal complaints but not for musculoskeletal complaints, is not supported by the record.

The ALJ erred in finding that Plaintiff's subjective testimony was not credible. In

16 - OPINION & ORDER

addition to a purported lack of support by the objective medical record, the ALJ faulted Plaintiff's failure to pursue treatment, failure to stop using alcohol, and failure to attend certain appointments. The ALJ initially did not cite to a particular date or page in the record to support her finding, instead choosing to cite to more than 300 pages of medical records collectively. Such a citation fails to provide an adequate basis for support. While Defendant attempts to overcome the ALJ's lack of specificity, Defendant's citations do not support the ALJ's finding. Moreover, the ALJ failed to properly ascertain why Plaintiff failed to follow treatment or miss appointments, an issue squarely raised by Plaintiff's hearing testimony regarding her lack of insurance. Because the ALJ's findings based on a failure to pursue follow-up, failure to adhere to recommendations, and failure to attend all of her appointments are not supported by substantial evidence in the record, the only basis for the credibility finding is the lack of support in the objective medical evidence due to the "fairly unremarkable exam findings." As noted above, unsupportive or conflicting objective medical evidence alone cannot negate a Plaintiff's subjective symptom testimony. Thus, the ALJ's credibility finding was in error.

## II. Past Relevant Work

In support of her DIB application, Plaintiff completed a Work History Report and a Disability Report in December 2011. Tr. 184-90; Tr. 191-97. She described her previous work as an "assay tech" at a gold mine. Tr. 184, 193. In describing the work, she stated she was paid $23/hour and "filed paperwork, worked at a gold mine[.]" Tr. 185, 193-94. She did not use machines, tools, or equipment, and did not use technical knowledge or skills. Id. Although she states that she did "writing, complete[d] reports, or perform[ed] duties like this," there is no further information regarding exactly what Plaintiff did in that regard. Id. She worked twelve-

hour days, walking, standing, or sitting for four hours each per day, supervised no other employees, and was not a lead worker. Id. Dr. Duran's June 2012 report indicates that she was a "lab technician." Tr. 561; see also Tr. 580 (April 15, 2013 psychological evaluation indicating that she worked for five years as an "assay lab technician for the mining industry").

At the hearing, the ALJ confirmed that Plaintiff had been a "technician, gold mine" between July 2005 and May 2010. Tr. 43. Plaintiff told the ALJ that she had on-the-job training for the position. Tr. 45. When the ALJ asked Plaintiff to give a brief description of "exactly what you did" as a technician, Plaintiff responded: "Well, there were several different jobs. One prep which I couldn't do anymore because you have to lift a 50-pound bag over your head. I couldn't do that." Tr. 44. Plaintiff continued: "I was an assay tech, which means I was standing on the cement floor for ten hours a day, reading gold. And then I was an acid digestion person." Id.

Vocational expert (VE) John Komar testified at the hearing. Tr. 58-61. In response to the ALJ's request to classify Plaintiff's past relevant work (PRW), the VE testified that she was employed "as an assay technician. [Dictionary of Occupational Titles] DOT number 022.281-010." Tr. 58. The VE explained that customarily, the position is at the light exertion level but as Plaintiff actually performed it, it was heavy. Id. In response to the ALJ's hypothetical with limitations of light work, some postural limitations, no repetitive overhead reaching, and frequent as opposed to constant handling, the VE testified that the person could perform the occupation of assay technician, as it is customarily performed. Tr. 59. The person could not, however, perform it as Plaintiff had actually performed it. Id.

In her decision, the ALJ concluded that Plaintiff could perform her PRW as an assay

technician because it did not require the performance of work-related activities precluded by the RFC. Tr. 32. In making this finding, the ALJ relied on the VE's testimony, and in particular the VE's citation to the job noted as DOT No. 022.281-010. Tr. 32-33.

Plaintiff argues that the ALJ erred at step four by finding that Plaintiff can perform her PRW because the job identified by the VE and relied on by the ALJ is not the job performed by Plaintiff in her PRW. The DOT job number provided by the VE and used by the ALJ is for the position of "asssayer." 1991 WL 646488. It is within the "occupational group" for professional, technical, and managerial occupations in mathematics and physical sciences, specifically chemistry. Id. Its "industry designation" is "professional and kindred occupations." Id. Its job description in the DOT is as follows:

> Tests ores and minerals and analyzes results to determine value and properties of components, using spectrographic analysis, chemical solutions, and chemical or laboratory equipment, such as furnaces, beakers, graduates, pipettes, and crucibles: Separates metals or other components from dross materials by solution, flotation, or other liquid processes, or by dry methods, such as application of heat to form slags of lead, borax, and other impurities. Weighs residues on balance scale to determine proportion of pure gold, silver, platinum, or other metals or components. May specialize in testing and analyzing precious metals and be designated Gold-And-Silver Assayer (profess. & kin.).

Id.

The DOT also states that this job requires the application of "principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions" and the abilities to "[i]nterpret an extensive variety of technical instructions in mathematical or diagrammatic form" and to "[d]eal with several abstract and concrete variables." Id. The position also requires "[w]ork with exponents and logarithms, linear equations, quadratic equations, mathematical induction and binomial theorem, and permutations[,]" the application of

19 - OPINION & ORDER

"concepts of analytic geometry, differentiations, and integration of algebraic functions with applications[,]" and the ability to "[a]pply mathematical operations to frequency distributions, reliability and validity of tests, normal curve, analysis of variance, correlation techniques, chi-square application and sampling theory, and factor analysis." Id.

Plaintiff argues that she reported performance of none of the job duties for the position of "assayer." Instead, her job description suggests a more clerical job, not a chemist's job. Plaintiff contends that the ALJ failed in her duty to fully develop the record regarding her PRW as required under SSR 82-62. That regulation states that while the claimant is the primary source for vocational documentation and the claimant's statements are generally sufficient for determining skill level and nonexertional and exertional demands of PRW, "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62, available at 1982 WL 31386, at *3. The SSR states that "[s]ufficient documentation will be obtained to support the decision" and that "[d]etailed information . . . will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source." Id. A detailed description of the tasks and responsibilities is necessary. Id. Finally, although an ALJ may make reasonable inferences regarding a claimant's ability to perform PRW, "presumptions, speculations and suppositions must not be used." Id.

Plaintiff argues that the ALJ ignored these requirements because she did not make every effort to secure evidence to determine Plaintiff's PRW including detailed information about the physical or mental demands of Plaintiff's former position. She relied on no information obtained from the employer or another informed source. Id. Instead, she relied on the VE's citation to a DOT code which Plaintiff argues is for a different position.

20 - OPINION & ORDER

In response, Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff had PRW as an assay technician. But, that argument misses the point. There is no dispute that Plaintiff has PRW performing the position she herself referred to as an "assay tech." The issue is whether the job identified by the VE and then the ALJ is in fact Plaintiff's PRW. Defendant cites to Plaintiff's description of her work as an "assay tech," that she earned $23/hour, that she worked 48 hours per week, and that she said she spent time "reading gold" as supportive of the ALJ's finding. But none of these descriptions, other than the vague and non-descriptive reference to "reading" gold without further clarification from Plaintiff or the ALJ, suggest that Plaintiff tested ores to determine their value using spectrographic analysis, chemical solutions and chemical or laboratory equipment, that she separated metals by solution, flotation, or other wet or dry methods, or that she weighed residues. Defendant also notes that Plaintiff repeatedly described her work as that of a "lab technician." Defendant cites to two records only, which is barely suggestive of "repeated" descriptions, and, in each of those, the description was written by the person to whom Plaintiff provided the information and it is unclear whether the description was Plaintiff's or the interviewer's. Tr. 561 (Dr. Duran's report); Tr. 580 (psychological evaluation). In any event, the reference to the work, even if by Plaintiff herself, as that of "lab technician" is no more illuminating of what she actually did than the other testimony.

Another indication suggesting that the identified job is not, in fact, Plaintiff's actual PRW is that as Plaintiff described her work, she frequently engaged in lifting, sometimes heavy objects. Tr. 44. The exertional level for the assayer position identified by the VE is light. This indicates some level of disconnect between Plaintiff's PRW and the job provided by the VE. While jobs do vary in actual performance, this inconsistency should have triggered a more

thorough assessment of Plaintiff's PRW by the VE and/or the ALJ.

I agree with Plaintiff that the ALJ's step four finding is not supported by the VE's testimony regarding Plaintiff's PRW. The ALJ erred at step four.

III. Physician Opinions

Dr. Duran examined Plaintiff in June 2012. Tr. 560-66. On physical examination, Plaintiff had restricted range of motion in her shoulders. Tr. 562. In a checklist, Dr. Duran indicated that Plaintiff had limited range of motion in reaching shoulder level and separately, in reaching above her shoulders. Tr. 564. One of his four diagnoses was adhesive capsulitis of the shoulder. Id. In his narrative impressions, he wrote that "[a]dhesive capsulitis of the shoulders [is] by far the most limiting of [Plaintiff's] impairments[.]" Id. He stated that she had difficulty getting her arms to and above the shoulder level which may impair her ability to lift and carry loads. Id.

In February 2013, Dr. Villaflor opined that Plaintiff had reaching limitations, both left and right, front, laterally, and overhead. Tr. 90. She limited Plaintiff to only occasional overhead reaching and frequent front and lateral reaching. Id.

In her opinion, the ALJ found that Plaintiff had severe impairments in the neck and spine, but she rejected Plaintiff's depression, anxiety, and substance addiction disorder as severe impairments. Tr. 28. The ALJ did not mention Plaintiff's shoulder diagnosis. Id. Later, in discussing Plaintiff's credibility, the ALJ noted, without citation, that Plaintiff cannot perform repetitive overhead reaching but she can perform frequent handling. Tr. 31. She remarked that Plaintiff fractured her shoulder in July 2010. Id. (further citing the shoulder fracture as an exception to what the ALJ described as generally "unremarkable physical exams"). The ALJ

then cited, as noted above, Exhibits 1F and 2F for the proposition that Plaintiff apparently failed to pursue follow-up treatment for her shoulder.  Id.

The ALJ recited Dr. Duran's findings, including that Plaintiff had decreased range of motion to her neck and bilateral shoulders.  Id.  The ALJ noted that Dr. Duran opined that Plaintiff would have limited ability to reach at shoulder level and above shoulder level.  Id.  Then, the ALJ cited to Dr. Villaflor's opinion, noting the limitations to occasional overhead reaching and frequent front and lateral reaching, among others.  Tr. 32.  After finding Plaintiff's subjective testimony not credible, the ALJ gave great weight to Dr. Duran's and Dr. Villaflor's recommendations of "occasional postural activities, limited reaching and handling, and avoiding hazards."  Id.

Plaintiff notes that the ALJ acknowledged Plaintiff's reaching limitations but did not mention her adhesive capsulitis.  See Tr. 31 (ALJ's description of Dr. Duran's report).[4]  She suggests that because the RFC addressed only the limitation of overhead reaching, it did not sufficiently address Dr. Duran's opinion that she was limited in reaching both *at* and *above* the shoulder level.  And, the RFC failed to address Dr. Villaflor's limitation in lateral and front reaching.  She contends this was error.

_____

[4] In a summary of her arguments in her Opening Memorandum, Plaintiff contends this is a step two error.  Pl.'s Op. Brief 9.  But, later, she discusses it in the context of the improper rejection of physician opinion testimony.  Id. at 17-18.  Given that the ALJ credited Dr. Duran's and Dr. Villaflor's upper extremity restrictions which were based on the shoulder problem, the ALJ probably erred at step two by omitting adhesive capsulitis as a severe impairment. However, where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Because the issue hinges on whether the RFC included the limitations caused by the shoulder condition, I address it here rather than as a separate step two argument.

Plaintiff frames her argument as an improper rejection of physician opinion. Although the ALJ expressly gave great weight to the reaching limitations of both Dr. Duran and Dr. Villaflor, given that the RFC includes a limitation only to overhead reaching and omits limitations for reaching *at* shoulder level or lateral or front reaching, it is fair to characterize the omission as an implicit rejection of those limitations. An ALJ must consider and weigh medical opinions and provide specific and legitimate reasons for crediting one medical opinion over another. 20 C.F.R. § 404.1527(2); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). Because the ALJ failed to articulate why the RFC did not contain all of the reaching limitations of the physicians whose opinions she otherwise credited, she erred.

Defendant tries once again to correct the ALJ's error. Defendant argues that in the RFC, the ALJ incorporated the level of limitation assessed by Dr. Duran that was supported in the record. Defendant notes that Dr. Duran did not specify the degree of Plaintiff's reaching limitation except that it was at or above shoulder level. Defendant contends that the ALJ's overhead reaching restriction properly accounted for Dr. Duran's limitations and that the evidence does not otherwise support a finding of a severe shoulder impairment.

This argument is unpersuasive. Even without a specific degree of limitation, Dr. Duran's limitation addressed reaching *at* or *above* shoulder level. The limitation in the RFC captures only overhead reaching and does address reaching *at* the shoulder. The limitation given by Dr. Villaflor also included lateral and front reaching which the RFC fails to capture as well. And, Defendant's position that evidence does not support restrictions greater than those contained in the RFC is contrary to the fact that the ALJ gave great weight to Dr. Duran's and Dr. Villaflor's opinions with no suggestion that she was crediting only some of the limitations caused by the

24 - OPINION & ORDER

shoulder impairment.

Defendant also argues that any error in rejecting Dr. Villaflor's opinion is harmless because the job of assayer as identified by the VE and cited by the ALJ as Plaintiff's PRW, requires only frequent reaching. Thus, even if Plaintiff is limited to frequent front and lateral reaching, the limitation would not have prevented the performance of the PRW. The problem here is that for the reasons explained above, the finding that Plaintiff can perform PRW identified as an assayer with DOT No. 222.281.020, is error and thus, at this point, the error of omitting the restrictions from the RFC cannot be characterized as harmless.

I agree with Plaintiff that the ALJ erred by implicitly rejecting certain of the shoulder and reaching limitations given by Dr. Duran and Dr. Villaflor which were not incorporated into the RFC.

IV. Lay Opinion Testimony

Plaintiff's husband Franklyn Graham submitted a Third-Party Function Report in which he states that he and Plaintiff watch television together, that Plaintiff cannot sit or stand for a long time and cannot lift, and that he takes care of their animals. Tr. 219-20. Although Plaintiff used to be able to work, run, cook, etc., she now cannot stand for a long time and can do no household chores. Tr. 220-21. She does not prepare her own meals. Tr. 221. She cannot drive comfortably and she shops only once per month for about thirty minutes at a time. Tr. 222. Mr. Graham opined that Plaintiff could lift approximately twenty pounds and that her impairments affect a variety of abilities including lifting, squatting, bending, standing, sitting, kneeling, and stair climbing. Tr. 224. He thought she could walk about 100 yards before needing to stop and rest for five minutes before being able to resume. Id.

25 - OPINION & ORDER

The ALJ addressed this lay witness testimony.  She rejected Mr. Graham's opinions about Plaintiff's limitations and "accorded [them] little weight . . . because they are inconsistent with the claimant's own statements, they lack medically acceptable standards, and they are generally inconsistent with the objective medical evidence."  Tr. 32.

Plaintiff argues that the ALJ erred in disregarding Mr. Graham's testimony because a lack of medically acceptable standards is an improper basis for rejecting a lay witness's testimony.  She also contends that the ALJ failed to identify the alleged inconsistencies between Mr. Graham's statements and Plaintiff's and similarly, that a determination that his statements are "generally inconsistent with the objective medical evidence" is an unsupported, nonspecific assertion.

"Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account."  Molina, 674 F.3d at 1114.  The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses.  Valentine, 574 F.3d at 694.

I agree with Plaintiff that a lay witness's testimony is not discreditable because it lacks "medically acceptable standards."  This is not germane to a lay witness's testimony which, by definition, is not a medical opinion.  However, I agree with Defendant that the ALJ's other bases for disregarding Mr. Graham's opinion are acceptable germane reasons which are supported in the ALJ's decision as well as in the record.  Although the ALJ could have been more clear and given specific examples in the actual discussion of Mr. Graham's testimony, her failure to do so is not fatal.  See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (ALJ's rejection of lay witness testimony was not error even without clearly linking the determination to allegedly inconsistent

statements when those statements were otherwise noted in the opinion).

Here, as the ALJ noted, Plaintiff reported that she could complete financial tasks such as pay bills and handle checking and savings accounts, pay attention, and get along with others without problems.  Tr. 30, 198-205.  In contrast, Mr. Graham reported that Plaintiff could not pay bills or handle a savings account, has problems completing tasks and concentrating, and has problems getting along with others.  Tr. 219-26.  As to the medical evidence, Mr. Graham stated that Plaintiff could not lift more than twenty pounds and was severely restricted in sitting, standing, and walking.  These limitations were in contrast to those provided by Dr. Duran and Dr. Villaflor who opined she could stand or walk up to six hours in an eight-hour workday, Tr. 563, 89, as well as sit about six hours in an eight-hour day.  Tr. 89 (Dr. Villaflor).  Substantial evidence supports the ALJ's rejection of Mr. Graham's testimony.

V.  Remand

Because of the ALJ's errors, the RFC and hypothetical to the VE, and thus her step-four finding, were not based on substantial evidence in the record and thus, the decision cannot stand. E.g., Valentine, 574 F.3d at 690 (hypothetical presented to the VE is derived from the RFC; to be valid, the hypothetical presented to the VE must incorporate all of a plaintiff's limitations); Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (an incomplete hypothetical cannot "constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert").

Plaintiff seeks a remand for a determination of benefits.  Defendant contends that a remand for additional proceedings is required.  I agree with Defendant.

In social security cases, remands may be for additional proceedings or for an award of

benefits.  E.g., Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir.2014) (explaining that if

"additional proceedings can remedy defects in the original administrative proceeding, a social

security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse

and remand a determination by the Commissioner with instructions to calculate and award

benefits") (internal quotation marks omitted).

    To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test.

Id. at 1020; see also Treicher v. Comm'r, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has

three steps).  First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence,

whether claimant testimony or medical opinion.  Garrison, 759 F.3d at 1020.  Second, the record

must be fully developed and further administrative proceedings would serve no useful purpose.

Id.  Third, if the case is remanded and the improperly discredited evidence is credited as true, the

ALJ would be required to find the claimant disabled.  Id.  To remand for an award of benefits,

each part must be satisfied.  Id.; see also Treicher, 775 F.3d at 1101 (when all three elements are

met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from

the ordinary remand rule" of remanding to the agency).  The "ordinary remand rule" is "the

proper course" except in rare circumstances.  Treicher, 775 F.3d at 1101.

    Plaintiff argues that when her subjective testimony is credited as true, she can perform

work at no greater than a sedentary level, she has no transferable skills, and as a result, she is

disabled as directed by the Medical-Vocational Guidelines ("the Grids"), under Rule 201.14.  20

C.F.R. § Pt 404, Subpt. P, App. 2.  Plaintiff may be correct, but in this case, that is a

determination that the ALJ should make in the first instance.  Although the ALJ improperly

discredited Plaintiff's testimony by failing to explore why Plaintiff had missed appointments or

failed to pursue recommended treatment, and by improperly finding that Plaintiff had not attempted to stop drinking, the objective medical evidence is equivocal and does not overwhelmingly establish a sedentary level of exertion.  The evidence, as credited by the ALJ, shows upper extremity limitations.  Other objective evidence establishes moderate to severe multilevel degenerative cervical disk disease.  Tr. 555 (March 2012 cervical MRI).  However, the evidence of low back and lower extremity impairment is not as clear.  E.g., Tr. 560-66 (Dr. Duran's 2012 report stating that on physical examination, she had an antalgic gait, but also had full muscle strength in her lower extremities and negative straight leg testing bilaterally).  Additionally, the ALJ concluded her analysis at step four.  The ALJ should be permitted to proceed to consider the step-five determination.  Because the "ordinary remand rule" is to remand for additional proceedings and this case does not present a "rare circumstance," I remand for additional proceedings.

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016

_____
Marco A. Hernandez
United States District Judge

29 - OPINION & ORDER